# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

# CHARLESTON DIVISION

| | |
|---|---|
| BRIANNA ANN SUNSHINE, ) | |
| aka WILLIAM ALLEN LARUE, ) | |
| ) | |
| **Plaintiff,** ) | |
| v. ) | **Civil Action No. 2:21-00667** |
| ) | |
| BETSY C. JIVIDEN, ) | |
| ) | |
| **Defendant.** ) | |

## PROPOSED FINDINGS AND RECOMMENDATION

Pending before the Court are the following: (1) Plaintiff's Motion for Preliminary Injunction (Document No. 3), filed on December 27, 2021; and (2) Plaintiff's Motion for Restraining Order (Document No. 7), filed on December 30, 2021. For the reasons explained below, the undersigned has concluded that Plaintiff's above Motions should be denied.

## FACTUAL AND PROCEDURAL BACKGROUND

On December 23, 2021, Plaintiff,[1] acting *pro se*, filed a Complaint seeking relief for alleged violations of her constitutional rights pursuant to 42 U.S.C. § 1983 and for deprivations under the Americans with Disabilities Act ["ADA"], 42 U.S.C. § 12131, *et seq*.[2] (Document No. 1.) Plaintiff names the following as Defendants: (1) Betsy C. Jividen, Commissioner of the West Virginia Division of Corrections and Rehabilitation; (2) Scott Felton, Correctional Officer at Huttonsville Correctional Center ("HCC"); (3) David Defibaugh, Correctional Hearing Officer at HCC; (4)

---

[1] According to the West Virginia Division of Corrections and Rehabilitation's offender search, Plaintiff is identified as William Allan Larue.

[2] Because Plaintiff is acting *pro se*, the documents which she has filed in this case are held to a less stringent standard than if they were prepared by a lawyer and therefore, they are construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

Shelby O. Searls, Superintendent of HCC; and (5) David Proctor, Doctor at HCC. (Id.) Plaintiff alleges that she is a transgender female, who has a serious medical condition known as gender dysphoria. (Id.) Plaintiff first alleges that Defendants are violating her right to equal protection and subjecting her to cruel and unusual punishment in violation of her constitutional rights by treating Plaintiff "as if she were a male, despite knowing that she is a transgender female." (Id.) Specifically, Plaintiff complains that Defendants are failing to correct the WVDCR database to reflect Plaintiff's gender as a female. (Id.) Plaintiff alleges that Defendant Betsy Jividen and Shelby O. Searls' action of treating Plaintiff as a male and failing to correct the WVDCR database to reflect Plaintiff's gender as a female "caused Plaintiff to be brutalized by Defendant Scott Felton." (Id.) Plaintiff further alleges that Defendants are improperly allowing Plaintiff's "bodily privacy" to be violated by male inmates, who watch Plaintiff shower and enter the restroom while Plaintiff is relieving herself. (Id.) Plaintiff explains that Defendants allow male inmates to verbally assault and sexually harass Plaintiff. (Id.) Plaintiff contends that the foregoing constitutes deliberate indifference to her health and safety. (Id.) Plaintiff explains that the foregoing exacerbates Plaintiff's depression, anxiety, and hopelessness thereby subjecting her to "a substantial risk of additional imminent serious psychological and physical harm." (Id.)

Second, Plaintiff complains that Defendant Scott Felton subjected Plaintiff to unnecessary and excessive force on November 4, 2021. (Id.) Plaintiff claims that Defendant Felton and other guards pinned her "down and kneeled on her back." (Id.) Plaintiff alleges that she "told them she could not breath, yet they ignored her." (Id.) Plaintiff asserts that Defendant Felton "was not able to contain his prejudice against transgenders and had beaten the Plaintiff to within an inch of her life." (Id.) Plaintiff explains that Defendant Felton "stomped on her face, head, right hand, kicked her in the head, ribs," attempted "to break every bone in her body, as well as attempting to smother

and choke her to death." (Id.) Plaintiff asserts that Defendant Felton's use of the above unnecessary and excessive force was "in retaliation for her complaining about her bodily privacy being violated when male inmates enter the gym bathroom while she was in the bathroom" relieving herself. (Id.) Plaintiff explains that "she has a right to use the bathroom in private" because she is a transgender female. (Id.) Plaintiff alleges that because she was unable to provide the names of the male inmates who would not stay out of the gym bathroom while Plaintiff was relieving herself, Defendant Felton advised Plaintiff that she would be put in "Unit E-2 on Special Management, aka protective custody." (Id.) Plaintiff alleges that Defendant Felton explained that protective custody was necessary because "inmates on B-1 was going to retaliate on her and hurt her because of her complaining about not being allowed to use the bathroom in private." (Id.) Plaintiff asserts that Defendant Felton "made up the erroneous threat to [Plaintiff] by certain B-1 inmates that simply does not exist." (Id.) Plaintiff alleges that after she advised Defendant Felton that "Special Management" or protective custody was unnecessary, she had the urgent need to use the restroom. (Id.) Plaintiff explains that she attempted to exist the gym office to head to the gym restroom, but Defendant Felton told her to "stop and cuff up." (Id.) Plaintiff acknowledges that she told Defendant Felton "no, she has to use the toilet, and as [she] tried to get to the bathroom," Defendant Felton took actions to restrain Plaintiff. (Id.) Plaintiff complains that Defendant Felton's actions "caused her to end up soiling herself and caused [Plaintiff] to have an all-out-anxiety attack." (Id.) Plaintiff alleges that although Defendant Felton knew Plaintiff was having an anxiety attack, he continued "his quest of escorting her to Unit E-2 and placing her on Special Management." (Id.) Plaintiff complains that Defendant Felton "erroneously perceived" her anxiety attack as aggression resulting in his use of unnecessary and excessive force against Plaintiff. (Id.) Plaintiff alleges that after Defendant Felton "severely" beat her, he placed Plaintiff "in a restraint chair for two (2) solid

3

hours, and she was not allowed to use the toilet, or even clean herself up." (Id.) Plaintiff alleges that as a result of the "severe beating," Plaintiff's "entire left side, left arm and ribs are still in severe constant pain and extreme agony." (Id.)

Third, Plaintiff complains that Defendant Felton filed false disciplinary charges against Plaintiff and Defendant David Defibaugh violated her right to due process by conducting her disciplinary hearing outside Plaintiff's presences on November 9, 2021. (Id.) Plaintiff further complains that Defendant Defibaugh failed to view the video footage of the incident before rendering his decision finding Plaintiff guilty of the disciplinary charge. (Id.) Finally, Plaintiff asserts that Defendant Defibaugh acted with deliberate indifference to Plaintiff's gender dysphoria when he sanctioned Plaintiff to segregation and a loss of privileges for six months. (Id.)

Finally, Plaintiff contends that the ADA requires Defendants to "make modifications in their policies, practices, and procedures in order to accommodate the medical needs of the Plaintiff, a transgender female." (Id.) Plaintiff contends that Defendants are violating the ADA by refusing to "provide the exact same treatments, serves, medical care, and programs to the Plaintiff, a transgender female, that are provided to biological female inmates." (Id.) Specifically, Plaintiff complains that she does not have access to "medically necessary care, including vaginoplasty, vulvoplasty, labiaplasty, clitoroplasty, mammoplasty, facial and body hair removal through electrolysis and laser treatments, and hair construction." (Id.) Plaintiff requests injunctive and declaratory relief, monetary damages, and restoration of 5,840 days of good time credit. (Id.)

On the same day, Plaintiff filed her Motion for Preliminary Injunction. (Document No. 3.) Specifically, Plaintiff first requests that this Court order Defendants Jividen and Searls "to correct the WVDCR database records to reflect the information of the Plaintiff's legal female name of Brianna Ann Sunshine and her sex as a female in accordance to her birth certificate hereto attached

as Exhibit A." (Id.) Second, Plaintiff requests the Court for an injunction ordering Defendants Defibaugh and Searls "to cease and desist treating the Plaintiff as if she were a male, knowing that Plaintiff is a female according to her birth certificate" and "cease and desist referring to her and addressing her by masculine pronouns and titles and address and refer to her by female pronouns and titles and by the Plaintiff's first name only." (Id.) Third, Plaintiff requests that Defendants be ordered to provide Plaintiff with the "same standard of medical care, treatments, and procedures that is accorded to biological female inmates in custody of the WVDCR." (Id.) Fourth, Plaintiff requests that Defendants Jividen and Searls be ordered to provide Plaintiff with "all of the same treatments, services, and programs that are accorded to biological female inmates in the custody of the WVDCR." (Id.) Fifth, Plaintiff requests that Defendant Searls be ordered "to comply with the mandate of 28 C.F.R. § 115.15(a), which clearly states that "the facility shall not conduct cross-gender strip searches or cross-gender visual body cavity searches (meaning a search of the anal or genital opening) except in exigent circumstances or when performed by medical practioners." (Id.) Sixth, Plaintiff requests that Defendants Searls and Jividen be ordered "to comply with the mandate of 28 C.F.R. § 115.15(d), which clearly states that 'the facility shall implement policies and procedures that enable inmates to shower, perform bodily functions, change clothing without nonmedical staff of the opposite gender viewing their breast, buttocks, or genitalia except in exigent circumstances or when such viewing is incident to routine cell checks." (Id.) Seventh, Plaintiff requests that Defendants Jividen, Searls, and Felton be ordered to give Plaintiff the opportunity to shower and use the restroom separately from other inmates. (Id.) Eighth, Plaintiff requests that Defendant Searls be directed to revise policies and procedures at HCCJ concerning allowable personal property items. (Id.) Ninth, Plaintiff requests that Defendant Jividen be directed to revise WVDCR Policy Direction No. 411.00 to be in compliance with the mandates of the ADA.

(Id.) Finally, Plaintiff requests that Defendants "cease and desist housing the Plaintiff . . . in the Unit E segregation housing units, and to release her back to Unit B-1 and assign her to the bottom bunk in a two person cell with inmate Gregory George # 3647665, being assigned to the top bunk, on the top tier." (Id.)

On December 30, 2021, Plaintiff filed her Motion for a Restraining Order. (Document No. 7.) Plaintiff again requests that Defendants Jividen, Searls, Defibaugh, and Felton "cease and desist housing the Plaintiff, Ms. Sunshine, in the Unit 4 men's segregation housing units and release her back to Unit B-1, assign her to the bottom bunk, in a two person cell with Inmate Gregory George, #3647665, being assigned to the top bunk." (Id.) Plaintiff alleges that every time she enters a shower stall and showers, her privacy is violated. (Id.) Plaintiff explains that male prisoners routinely stand at their cell door window across from the shower stall watching her while she showers. (Id.) Plaintiff claims these male inmates subject her to sexual harassment by "asking her to show her pussy, breasts, and buttocks to them so they can get off while they masturbate while they stand at their cell door window . . . and they even ask her to give them some pussy and oral sex." (Id.) Plaintiff complains that male inmates expose their genitalia to Plaintiff when their food slots are opened. (Id.) Plaintiff further claims that male inmates within Unit E routinely harass Plaintiff on a daily basis by telling Plaintiff that "she is a fag and that she needs to hang herself, and if she doesn't, they will help her and do it themselves." (Id.) Plaintiff states that the foregoing is causing her to experience anxiety, depression, and anger. (Id.) Plaintiff complains that correctional officers do nothing to stop the above harassment by the male inmates. (Id.) Plaintiff argues that she "has the right not to be sexually harassed, verbally or physically, by male inmates on the Unit E segregation unit." (Id.)

6

By Order entered on January 5, 2022, the undersigned granted Plaintiff's Application to Proceed Without Prepayment and Fees, directed Plaintiff to pay an initial partial payment of the filing fee, and directed the Clerk to issue process promptly upon receipt of Plaintiff's initial partial payment of the filing fee. (Document No. 11.) On January 31, 2022, Plaintiff paid the initial partial payment of the filing fee. (Document No. 29.) The Clerk issued process upon Defendants on February 2, 2022. (Document No. 30.) On February 16, 2022, Defendant Felton filed his Answer to Plaintiff's Complaint. (Document No. 44.)

On February 23, 2022, Defendant Proctor filed his Motion to Dismiss and Memorandum in Support. (Document Nos. 51 and 52.) Specifically, Defendant Proctor argued that Plaintiff's Complaint should be dismissed based on the following: (1) Plaintiff's ADA claim "must be dismissed as a matter of law because Dr. Proctor cannot violate the ADA since he does not fall within the definition of 'public entities'" (Document No. 52, pp. 4 – 6.); (2) Plaintiff's claim based upon the allegation violation of the Prison Rape Elimination Act ("PREA") "must be dismissed as there is no private cause of action for a PREA violation" (Id., pp. 6 – 7.); (3) "Plaintiff cannot assert a West Virginia Human Rights Act claim against Dr. Proctor because prisons are not places of public accommodation under the West Virginia Human Rights Act" (Id., pp. 7 – 9.); (4) "Plaintiff's First, Fourth, and Fifth Amendment claims must be dismissed because Plaintiff has no constitutional right under these Amendments to receive the medical treatments Plaintiff seeks in the Complaint" (Id., p. 9.); (5) "Plaintiff has failed to state a claim for an Eighth Amendment violation" (Id., pp. 9 – 12.); (6) "Plaintiff has also failed to state a claim for a Fourteenth Amendment violation" (Id., pp. 12 – 14.); (7) "Plaintiff claim for violating 'international law' must be dismissed as it does not satisfy the pleading standard set forth in *Twombly*" (Id., pp. 14 – 15.).

Also, on February 23, 2022, Defendants Jividen, Defibaugh, and Searls filed their Motion to Dismiss and Memorandum in Support. (Document Nos. 54 and 55.) Specifically, Defendants Jividen, Defibaugh, and Searls argued that Plaintiff's Complaint should be dismissed based on the following: (1) Plaintiff cannot maintain a claim under the ADA because "gender dysphoria, also known as transsexualism or gender identity disorder, is specifically excluded from the definition of disability" (Document No. 55, pp. 6 – 7.); (2) "Defendant Jividen is entitled to dismissal because Plaintiff has previously entered into a binding settlement agreement forever releasing Jividen from any and all claims related to her gender dysphoria and requests for gender-confirming surgery" (Id., pp. 7 – 8.); (3) Plaintiff has failed to exhaust her administrative remedies concerning her claims for gender-confirming surgeries and related to her request for injunctive relief to change her gender identity on WVDCR records (Id., pp. 8 – 11.); (4) Plaintiff's claim that Defendant Defibaugh violated her due process rights should be dismissed because Plaintiff received notice of her hearing, an opportunity for an appeal to the Superintendent, and an opportunity to appeal to the Commissioner (Id., pp. 11 – 14.); (5) "To the extent Plaintiff attempts to assert claims against these Defendants for violations of the First, Fourth, Eighth, or Fourteenth Amendment or PREA, the West Virginia Human Rights Act, or International Law, Plaintiff has failed to state a claim upon which relief may be granted" (Id., pp. 14 – 15.); (6) Defendants Jividen and Searls are entitled to sovereign immunity under the Eleventh Amendment for Plaintiff's claim for compensatory damages (Id., pp. 15 – 16.); and (7) "Plaintiff's miscellaneous claims for relief fails as a matter of law and must be dismissed" (Id., pp. 16 – 20.)

Notice pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), was issued to Plaintiff on February 24, 2022, advising her of the right to file a response to Defendants' Motions to Dismiss. (Document No. 56.) By Order also entered on February 24, 2022, the undersigned

granted Defendant Proctor's "Motion to Stay Discovery During Pendency of the Motion to Dismiss" (Document No. 38). (Document No. 57.) On March 3, 2022, the undersigned granted Plaintiff's Motion for Extension of Time concerning the filing of her Response to Defendants' Motions to Dismiss and directed any response be filed by April 25, 2022. (Document Nos. 62 and 63.) On April 29, 2022, Defendant Proctor filed a "Motion to Designate his Motion to Dismiss as Unopposed and to Dismiss the Complaint for Failure to Prosecute." (Document No. 65.) After noting Plaintiff's lack of activity, the undersigned issued an Order on April 29, 2022, directing Plaintiff to "show cause in writing on or before May 16, 2022, as to why this civil action should not be dismissed for failure to prosecute." (Document No. 66.) On May 2, 2022, Defendants Jividen, Defibaugh, and Searls filed a "Motion to Designate Motion to Dismiss as Unopposed and to Dismiss the Complaint for Failure to Prosecute." (Document No. 67.) On May 18, 2022, Plaintiff filed her Response to the Court's Order dated April 29, 2022 and Motion for Extension of Time. (Document No. 68.)

Also on May 18, 2022, Plaintiff filed a "Motion to Dismiss" concerning Defendant Proctor. (Document No. 69.) Specifically, Plaintiff indicated that she wished to dismiss Defendant Proctor without prejudice. (Id.) On May 20, 2022, Defendant Proctor filed his "Response to Plaintiff's Motion to Dismiss." (Document No. 71.) By Proposed Findings and Recommendation ("PF&R") entered on June 6, 2022, the undersigned recommended that Plaintiff's "Motion to Dismiss" concerning Defendant Proctor (Document No. 69) be granted, Defendant Proctor's Motion to Dismiss (Document No. 51) and "Motion to Designate his Motion to Dismiss as Unopposed and to Dismiss the Complaint for Failure to Prosecute" (Document No. 65) be denied as moot, and refer the matter back to the undersigned for further proceedings concerning Plaintiff's claims against Defendants Jividen, Defibaugh, Searls, and Felton. (Document No. 72.)

On June 21, 2022, Plaintiff filed a "Motion to Deny Defendants' Betsy C. Jividen, David Defibaugh and Shelby O. Searl's Motion to Dismiss Plaintiff's Complaint as Moot." (Document No. 74.) In support, Plaintiff attached a copy of her Proposed Amended Complaint. (Document No. 74-1.) In arguing that Defendants' Motion to Dismiss should be denied, Plaintiff continuously referenced her Proposed Amended Complaint. (Document No. 74, pp. 5 – 8.) By Order entered on June 28, 2022, the undersigned construed Plaintiff's "Motion to Deny Defendants' Betsy C. Jividen, David Defibaugh and Shelby O. Searl's Motion to Dismiss Plaintiff's Complaint as Moot" as a Motion to Amend and granted the Motion. (Document No. 75.) The undersigned directed that the Clerk re-docket Plaintiff's Proposed Amended Complaint as an Amended Complaint. (Id.) The undersigned further notified Plaintiff that her Amended Complaint would supersede her original Complaint and allowed Plaintiff until August 1, 2022, to file her final Amended Complaint. (Id.) By Memorandum Opinion and Order entered on June 28, 2022, United States District Judge Irene C. Berger adopted the undersigned's PF&R, granted Plaintiff's Motion to Dismiss concerning Defendant Proctor (Document No. 69), denied as moot Defendant Proctor's Motion to Dismiss (Document No. 51), and denied as moot "Motion to Designate his Motion to Dismiss as Unopposed and to Dismiss the Complaint for Failure to Prosecute" (Document No. 65). (Document No. 77.) By Order entered on June 28, 2022, Judge Berger denied as moot Defendants Jividen, Defibaugh, and Searls' Motion to Dismiss (Document No. 54). (Document No. 79.)

**THE STANDARD**

Rule 65(b) of the Federal Rules of Civil Procedure sets forth the limited circumstances under which a temporary restraining order can be granted as follows:

> A temporary restraining order may be granted without written or oral notice to the adverse party or that party's attorney only if (1) it clearly appears from specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that

10

> party's attorney can be heard in opposition, and (2) the applicant's attorney certifies to the court in writing the efforts, if any, which have been made to give the notice and the reasons supporting the claim that notice should not be required.

Fed. R. Civ. P. 65(b). Rule 65(a) provides that a court may issue a preliminary injunction only on notice to the adverse party. Fed. R. Civ. P. 65(a). The Fourth Circuit explained the different functions of temporary restraining orders and preliminary injunctions in Hoechst Diafoil Company v. Nan Ya Plastics Corporation, 174 F.3d 411, 422 (4th Cir. 1999), as follows:

> While a preliminary injunction preserves the status quo pending a final trial on the merits, a temporary restraining order is intended to preserve the status quo only until a preliminary injunction hearing can be held: '[U]nder federal law [temporary restraining orders] should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer.' Granny Goose, 415 U.S. at 439.

"A plaintiff seeking a preliminary injunction *must* establish that [1] [s]he is likely to succeed on the merits, [2] that [s]he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in h[er] favor, and [4] that an injunction is in the public interest." Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7, 20, 129 S.Ct. 365, 374, 172 L.Ed.2d 249 (2008)(emphasis added). [A]ll four requirements must be satisfied." The Real Truth About Obama, Inc. v. Federal Election Commission., 575 F.3d 342, 346 (4th Cir. 2009), *judgment vacated on other grounds*, 559 U.S. 1089, 130 S.Ct. 2371, 176 L.Ed.2d 764 (2010).[3] The Fourth Circuit has explained that "[b]ecause a preliminary injunction affords, on a temporary basis, the relief that can be granted permanently after trial, the party seeking the preliminary injunction must demonstrate by 'a clear showing' that, among other things, it is likely to succeed on the merits at

---

[3] The United States Supreme Court vacated the original decision in *Real Truth* for further consideration in light of *Citizens United v. Federal Election Commission*, 558 U.S. 310, 130 S.Ct. 876, 175 L.Ed.2d 753 (2010). *The Real Truth About Obama, Inc. v. Federal Election Commission*, 559 U.S. 1089, 130 S.Ct. 2371, 176 L.Ed.2d 764 (2010). The Fourth Circuit, however, reissued its opinion on Parts I and II of its opinion. *The Real Truth About Obama, Inc. v. Federal Election Commission*, 607 F.3d 355 (4th Cir. 2010).

trial." Id. Furthermore, the Supreme Court "rejected a standard that allowed the plaintiff to demonstrate only a 'possibility' of irreparable harm because that standard was 'inconsistent with our characterization of injunctive relief as an extraordinary remedy that may be awarded upon a clear showing that the plaintiff is entitled to such relief." Id.(citing Winters, 55 U.S. at 22, 129 S.Ct. at 375-76.) Thus, a Court may not issue a preliminary injunction or temporary restraining order "simply to eliminate a possibility of a remote future injury." Kates v. Packer, 2014 WL 1218905, * 3 (M.D.Pa. March 24, 2014)(quoting Holiday Inns of America, Inc. v. B&B Corp., 409 F.2d 614, 618 *3rd Cir. 1969)("The requisite for injunctive relief has been characterized as a 'clear showing of immediate irreparable injury,' or a 'presently existing actual threat.'"). The irreparable harm alleged by movant must be "neither remote nor speculative, but actual and imminent." Direx Israel, Ltd. v. Breakthrough Medical Corp., 952 F.2d 802, 812 (4th Cir. 1991), *abrogation recognized on other grounds*, Sarsour v. Trump, 245 F.Supp.3d 719, n. 6 (4th Cir. 2017); also see Kates, 2014 WL 1218905 at * 3(The irreparable harm must be "actual and imminent, not merely speculative.") As the Fourth Circuit has explained, the Court is no longer required to balance the irreparable harm to the respective parties. Real Truth, 575 F.3d at 347. Rather the movant must make a clear showing that she is likely to be irreparably harmed, and the Court must "pay *particular regard* for the public consequences in employing the extraordinary remedies of an injunction." Id.(citations omitted).

## DISCUSSION

Concerning Plaintiff's Motion for Preliminary Injunction (Document No. 3), Plaintiff completely fails to allege or establish that she is likely suffer irreparable harm in the absence of the preliminary injunction. Accordingly, the undersigned respectfully recommends that Plaintiff's Motion for Preliminary Injunction (Document No. 3.) be denied.

Concerning Plaintiff's Motion for a Restraining Order (Document No. 7), the Court first finds there are no specific facts alleged by Plaintiff that establish that immediate and irreparable injury will result absence her transfer "back to Unit B-1 [with an assignment] to the bottom bunk, in a two person cell with Inmate Gregory George, #3647665." In her Motion, Plaintiff merely alleges that prison staff are failing to protect her from verbal and sexual harassment from other male inmates in the Unit 4 Segregation Unit. Plaintiff states that the foregoing is causing her to experience anxiety, depression, and anger. Plaintiff's conclusory claim that the foregoing results irreparable harm is insufficient. Plaintiff fails to explain how the foregoing is causing her irreparable harm. See DePaola v. Clarke, 2015 WL 5166900, * 1 (W.D.Va. Sep. 3, 2015)(finding plaintiff's allegation that segregation was exacerbation his mental health problems did not establish irreparable harm for the granting of a preliminary injunction for release from segregation). Plaintiff's conclusory and speculative allegation that irreparable harm will result is insufficient. As explained above, the mere possibility of harm will not suffice to support the granting of a temporary or preliminary injunction. Winter, 55 U.S. at 22, 129 S.Ct. at 375-76.

Furthermore, the undersigned notes that Plaintiff has failed to establish a "clear showing" that she is likely to succeed upon the merits. Although the undersigned determined upon screening pursuant to 28 U.S.C. § 1915A that Plaintiff's Complaint stated a colorable claim under Section 1983 against Defendants, there is no "clear showing" at this point in the proceedings that Plaintiff is likely to succeed on the merits. In her Motion, Plaintiff complains that prison staff are failing to protect her from verbal and sexual harassment from male inmates. There is no factual allegation that Defendants failed to protect Plaintiff from any type of physical or sexual contact by other male

inmates or that any male inmate made actual physical or sexual contact with Plaintiff.[4] At most, Plaintiff is alleging verbal and sexual harassment. The verbal harassment or verbal abuse of an inmate, without more, is insufficient to state a constitutional deprivation. Ivey v. Wilson, 832 F.2d 950, 954-55 (6th Cir. 1987); also see Lindsey v. O'Connor, 2009 WL 1316087, at * 1 (3rd Cir. (Pa.))(holding that "[v]erbal harassment of a prisoner, although distasteful, does not violate the Eighth Amendment"); Purcell v. Coughlin, 790 F.2d 263, 265 (2nd Cir. 1986)(stating that name-calling does not rise to the level of a constitutional violation); Collins v. Cundy, 603 F.2d 825, 827 (10th Cir. 1979)(finding that a sheriff's threats to hang a prisoner were insufficient to state a constitutional deprivation). Additionally, sexually harassment, absent contact or touching, is insufficient to state a constitutional claim. See Jackson v. Holley, 666 Fed.Appx. 242, 244 (4th Cir. 2016)(quoting Austin v. Terhune, 367 F.3d 1167, 1171 (9th Cir. 2004)("[A]lthough prisoners have a right to be free from sexual abuse, whether at the hands of fellow inmates or prison guards, the Eighth Amendment's protections do not necessary extend to mere verbal sexual harassment"); Morales v. Mackalm, 278 F.2d 126, 132 (2nd Cir. 2002)(abrogated on other grounds)(allegations that a prison guard asked an inmate to have sex with her and to masturbate in front of her did not rise to the level of an Eighth Amendment violation); Barney v. Pulsipher, 143 F.3d 1299, 1311, n. 11 (10th Cir. 1986)(allegations that a jailer subjected females prisoners to severe verbal sexual harassment was not sufficient to state a claim under the Eighth Amendment); Howard v. Everett,

---

[4] W.Va. Code § 61-8B-3 provides that a "person is guilty of sexual assault in the first degree when: (1) The person engages in sexual intercourse or sexual intrusion with another person and, in so doing: (i) Inflicts serious bodily injury upon anyone; or (ii) Employs a deadly weapon in the commission of the act; or (2) The person, being fourteen years old or more, engages in sexual intercourse or sexual intrusion with another person who is younger than twelve years old and is not married to that person." W.Va. Code § 61-8B-4 provides that a "person is guilty of sexual assault in the second degree when: (1) Such person engages in sexual intercourse or sexual intrusion with another person without the person's consent, and the lack of consent results from forcible compulsions; or (2) Such person engages in sexual intercourse or sexual intrusion with another person who is physically helpless."

2000 WL 268493, * 1 (8th Cir. March 10, 2000)(sexual comments and gestures by prison guards did not constitute an Eighth Amendment violation); Murray v. United States Bureau of Prisons, 1997 WL 34677, * 3 (6th Cir. Jan. 28, 1997)(offensive remarks regarding a transsexual prisoner's body appearance and presumed sexual preference failed to state an Eighth Amendment claim); Wilder v. Payne, 2014 WL 6772265, *7-8(N.D.W.Va. Dec. 1, 2014)(finding that a prison guard's offensive and unprofessional sexual comments failed to state an Eighth Amendment claim).

Based upon the foregoing, the undersigned finds that Plaintiff has not clearly shown that she is likely to succeed on the merits, or that she is likely to be irreparably harmed without a temporary restraining order or preliminary injunction. Accordingly, it is respectfully recommended that the District Court deny Plaintiff's Motion for Preliminary Injunction (Document No. 3) and Motion for Restraining Order (Document No. 7).

## PROPOSAL AND RECOMMENDATION

Based upon the foregoing, it is respectfully **PROPOSED** that the District Court confirm and accept the foregoing factual findings and legal conclusions and **RECOMMENDED** that the District Court **DENY** Plaintiff's Motion for Preliminary Injunction (Document No. 3) and Motion for Restraining Order (Document No. 7).

The Plaintiff is hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge Irene C. Berger. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(d) and 72(b), Federal Rules of Civil Procedure, the Plaintiff shall have fourteen (14) days (filing of objections) and three (3) days (if received by mail) from the date of filing of this Findings and Recommendation within which to file with the Clerk of this Court specific written objections

15

identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, District Judge Berger and this Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to Plaintiff, who is acting *pro se*, and transmit a copy to counsel of record.

Date: July 25, 2022.

Omar J. Aboulhosn
United States Magistrate Judge